UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALDO PATINO BANDONG,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.  2:21-cv-318-KJN<br><br><u>ORDER</u><br><br>(ECF Nos. 17, 19.) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits.[1]  In his summary judgment motion, plaintiff contends the Administrative Law Judge erred in:  (A) resolving the opinions of two of plaintiff's doctors regarding his physical and mental impairments; and (B) disregarding plaintiff's pain testimony.  Plaintiff seeks a remand for a grant of benefits or for further proceedings.  The Commissioner opposed, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons that follow, the court GRANTS plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion, and REMANDS the final decision of the Commissioner for further proceedings.

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties consented to proceed before a Magistrate Judge for all purposes.  (ECF Nos. 6, 11, 12.)

1

I.  **RELEVANT LAW**

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a). An Administrative Law Judge ("ALJ")is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

II. **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

In 2019, plaintiff applied for Disability Insurance Benefits, alleging an onset date of March 1, 2018. (Administrative Transcript ("AT") 104; 211.) Plaintiff claimed disability due to Irritable Bowel Syndrome; Lumbar Disc Generation; Bilateral Sacroliac Joint Pain; Arthropathy of Lumbar Facet; Chronic Low Back Pain Greater Than 3 Months; Hyperuricemia; Lumbar Spinal Stenosis; Bilateral Carpal Tunnel Syndrome; Lumbar Spondylosis; and Hyperlipidemia." (See AT 104.) Plaintiff's applications were denied initially and upon reconsideration, and he sought review with an ALJ. (AT 122; 140; 158.) At a July 2020 hearing, plaintiff testified about his conditions, and a vocational expert ("VE") testified regarding the ability of a person with various impairments to perform various jobs. (AT 43-76.)

On September 8, 2020, the ALJ issued a decision determining plaintiff was not disabled. (AT 25-38.) As an initial matter, the ALJ determined plaintiff met insured status through June 30, 2020. (AT 28.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since March 1, 2018. (Id.) At step two, the ALJ determined plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; carpal tunnel syndrome; cervical stenosis; depressive disorder; anxiety disorder; and post-traumatic stress disorder. (Id.) At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1. (Id., citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Regarding plaintiff's mental impairments, the ALJ considered Listing 12.04 for "depressive, bipolar, and related disorders," and 12.06 for "anxiety and obsessive-compulsive disorders," and considered both Paragraphs B and C. (AT 29.) Under Paragraph B, the ALJ found moderate limitations in the information and concentration categories, mild limitations in the adaptation category, and no limits in the interaction category. (Id.) For support, the ALJ cited reports from plaintiff and his wife as well as various medical records. (Id.) Under Paragraph C, the ALJ found the evidence demonstrated plaintiff was able to adjust to changes with little difficulty. (Id.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional restrictions: "frequent ladders, ropes or scaffolds,

stooping; frequent handling and fingering; capable of noncomplex and routine tasks and instructions; and capable of sustaining concentration and attention for two hour increments, in a low stress work environment with as few workplace changes as possible and only occasional decision making." (AT 30.) In crafting this RFC, the ALJ stated she considered plaintiff's symptoms alongside the medical evidence and opinions of the medical sources, including plaintiff's symptom and daily-activities testimony (AT 30-31), plaintiff's wife's report (AT 31), medical records (AT 32-33), and the medical opinions in the record and in the prior administrative medical findings (AT 33-36). Relevant here, the ALJ found plaintiff's pain allegations not as intense, given the evidence in the medical record, plaintiff's daily activities, medication management, and conservative treatment. (AT 32.) The ALJ was unpersuaded by the opinion of Dr. Campbell, a physician who treated plaintiff's physical impairments, finding it inconsistent with the record and unsupported by his treatment records. (AT 35-36.) The ALJ also was unpersuaded by two opinions of Dr. Dhillon, a psychiatrist who treated plaintiff's mental health, finding them inconsistent and unsupported. (AT 34-35.) The ALJ concluded plaintiff was incapable of performing past work, but found there were jobs in the national economy he could perform, such as a laundry worker, salvage laborer recycler, and production helper, and was therefore not disabled. (AT 36-37.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment. (ECF Nos. 1, 17, 19.)

### III. ISSUES PRESENTED

In his summary judgment motion, plaintiff contends the ALJ erred in: (A)(1) resolving Dr. Campbell's opinion regarding plaintiff's cervical stenosis, diffuse arthritis, carpal tunnel syndrome, tear of the fibrocartilage in his left wrist, and orthostatic hypotension; (A)(2) resolving Dr. Dhillon's opinion regarding plaintiff's inability to concentrate on simple tasks and withstand work stress; and (B) disregarding plaintiff's pain testimony. (ECF No. 17.)

The Commissioner disagrees, arguing the ALJ properly resolved the two doctors' opinions and plaintiff's pain testimony. Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should result in affirmance. (ECF No. 19.)

## IV. DISCUSSION

### A. Physician's Opinion Regarding Plaintiff's Physical Impairments

**Legal Standards – Medical Opinions and Persuasiveness**

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [a claimant's] medical sources." See 20 C.F.R. § 404.1520c(a). Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a). In determining how "persuasive" is the opinion of a medical source or PAMF, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." § 404.1520c(b), (c)(1)-(5); see also Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022) (noting a shift in reviewing standards under the revised regulations, including the inapplicability of prior hierarchy-based case law).

Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. § 404.1520c(a)-(b). In all cases, the ALJ must at least explain how the supportability and consistency factors were considered, as they are "the most important factors." § 404.1520c(b)(2). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMF(s)], the more persuasive [the opinion or PAMF] will be." § 404.1520c(c)(1). For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or [PAMF(s)] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion or PAMF] will be." § 404.1520c(c)(2). The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and "other") only where "two or more medical opinions or [PAMFs] about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." § 404.1520c(b)(2)&(3). "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

5

**Analysis**

Regarding Dr. Campbell's February 2019 medical source statement, the ALJ noted the doctor's specific citations to plaintiff's impairments, including "cervical stenosis at C4 to C5, depression, tear in his left wrist, PTSD, osteophyte, hypotension, diffuse arthritis, and carpal tunnel." The ALJ then noted the doctor's opinion that plaintiff's physical impairments limited his ability to stand, sit, lift, reach, handle, feel, push/pull, manipulate with his fingers—impairments the doctor believed precluded all work, even at the sedentary level. (AT 35, citing AT 326-27.) The ALJ found Dr. Campbell's opinion not persuasive because it was both inconsistent and unsupported by the evidence in the record. In doing so, the ALJ gave the following rationale:

> The record reveals the claimant's treatment has focused overall on routine and conservative care. Additionally, treatment has notably improved his symptoms and functioning. Throughout the relevant time period he has not sought out, nor required, a higher level of care to manage and/or improve his symptoms. Moreover physical examination findings were overall unremarkable or unchanged as they relate to his spine and hands/wrists. Overall this opinion is inconsistent with the claimant's treatment history, his present treatment needs, statements of his wife, statements of the claimant, diagnostic findings, objective examination findings, and activities.

(AT 35-36.) Plaintiff contends the ALJ's explanation is inadequate, even under the revised regulations. The undersigned concurs.

The court first takes up the ALJ's labeling of plaintiff's "treatment history, [] present treatment needs . . ., diagnostic findings, [and] objective examination findings," as routine and conservative, as demonstrating improvements in his symptoms, and as otherwise "unremarkable." (AT 35.) Though it is clear these are the conclusions the ALJ drew, it is unclear what the basis for those conclusions are, for nothing in the ALJ's rationale cites any evidence supporting such conclusions. Earlier in the decision, the ALJ noted certain records showed normal strength, tone, sensation and gait, mild stenosis in plaintiff's C4 and C5, and that no surgery was sought for plaintiff's carpal tunnel. (AT 32-33.) However, this part of the decision also notes significant continuing impairments with plaintiff's spine, back, and wrists, including "longstanding upper and lower back pain" that has "progressively worsened"; numbness and tingling in the lower extremities, difficulty turning his head, and pain with swelling through his wrists and hands";

6

occasional swelling, tenderness or decreased range of motion in his hands and wrists; infrequent positive straight leg raise findings on the left; and "degenerative changes contributing to moderate central stenosis at L5 to S1" in plaintiff's lumbar spine. (AT 32.) The ALJ also cites records indicating evidence of carpal tunnel in both hands and wrists; tenderness and swelling at times; and worsening grip on the left side. (Id.) Finally, the ALJ specifically noted "[i]mages of the claimant's left wrist from March 2018, reveal a partial thickness tear of the triangular fibrocartilage and a Ganglion cyst arising along the palmar margin of the distal radial ulnar joint space." (AT 33.) These records that appear to speak to impairments greater than what the ALJ found; without a more cogent explanation for why they do not require greater limitations, it is difficult for the undersigned to see how one should draw the conclusion the evidence is "unremarkable." Though the regulations have changed since 2017, the ALJ is still required to resolve conflicts and ambiguities in the record, and the above shows significant ambiguities remain unresolved. Ford, 950 F.3d at 1154.

Further, the undersigned is very concerned about the cherry picking here. Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"); see also Timothy P. v. Comm'r, Soc. Sec. Admin., 2022 WL 2116099, at *9 (D. Or. June 13, 2022) ("Although Woods made clear that the hierarchy among physicians' opinions no longer applies in this Circuit, the court did not address whether the new regulations upend the entire body of caselaw relating to medical evidence. . . It remains true that ALJs may not cherry-pick evidence in discounting a medical opinion."). In addition to the above ambiguities, plaintiff points to a not-insignificant number of records appearing to show more involved treatments he received—records that appear to have been overlooked by the ALJ. These include records indicating plaintiff received multiple steroidal injections and was prescribed, among other things, codeine for his pain management. (AT 334, 366, 370, 383, 391, 397-98, 407, 556.) Other courts have found this kind of treatment to be less than conservative, and the undersigned is persuaded by their rationale. See, e.g., Wentz v. Saul, 473 F. Supp. 3rd 1106, 1115 (E.D. Cal. 2020) (finding ALJ's statement that claimant was treated conservatively to be conclusory given the use

of narcotics in the treatment plan); Rawa v. Colvin, 672 Fed.Appx. 664, 667 (9th Cir. Nov. 15, 2016) (stating that steroid injections "are neither routine or conservative").

Further, despite the ALJ's statement that plaintiff's carpal tunnel improved with treatment, records between March 2018 and 2019 do not appear to be so clear-cut. (AT 390, 496, 562.) In fact, despite the ALJ's finding of improvement, the decision explicitly notes weakness in his grip, worse in the left hand, in 2019. (AT 32.) The decision contains no explanation of this incongruity, and other records aligning with greater impairments also appear to have been overlooked by the ALJ. See, e.g., Elizabeth B. v. Kijakazi, 2022 WL 4543686, at *6 (N.D. Cal. Sept. 28, 2022) ("ALJ erred in cherry-picking evidence that supported his conclusion while ignoring medical evidence that contradicted his conclusion"); Lilita H. v. Kijakazi, 2022 WL 4225395, at *3 (N.D. Cal. Sept. 13, 2022) (same); Jeanna M. B. v. Comm'r, 2022 WL 2045602, at *2 (W.D. Wash. June 7, 2022) (same).

Finally, regarding the ALJ's discounting of Dr. Campbell's opinion based on plaintiff's statement of his daily activities as well as he and his wife's testimony, the undersigned again notes the lack of a legally-sufficient rationale to support the ALJ's conclusion. For example, when resolving plaintiff's daily activities, the ALJ appears to have lumped a number of activities into a group before concluding that "[s]ome of the mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AT 32.) This kind of generalized finding does not meet the Ninth Circuit's requirement that an ALJ "elaborate on which daily activities conflicted with which part of [c]laimant's testimony." Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014).

Given these errors, the proper remedy is to remand for further proceedings. Plaintiff requests a remand for immediate benefits, but this would be inappropriate cherry picking on the court's part. As both parties are aware, it is for the ALJ to resolve ambiguities and conflicts in the record, and the court's rationale here is based strictly on the ALJ's failure to do so. Ford, 950 F.3d at 1154; Lambert, 980 F.3d at 1277.

///

///

### B. Remaining Points On Appeal

Because further proceedings are required, the court does not reach plaintiff's contentions regarding Dr. Dhillon, nor his argument regarding his subjective-symptom-testimony (save for the lacking analysis regarding his daily activities). On remand, it is within the ALJ discretion as to how much additional analysis should be articulated on these issues.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is GRANTED;
2. The Commissioner's cross-motion (ECF No. 17) is DENIED;
3. The final decision of the Commissioner is REVERSED AND REMANDED for further proceedings; and
4. The Clerk of Court shall issue judgment in plaintiff's favor and CLOSE this case.

Dated: December 14, 2022

_/s/ Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

band.318